UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Guel J. Jones,                )
                              )
    Plaintiff,            )
                              )
v.                            )   No. 14 CV 50150
                              )   Magistrate Judge Iain D. Johnston
Carolyn W. Colvin, Acting     )
Commissioner of Social Security, )
                              )
    Defendant.            )

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Guel J. Jones brings this action under 42 U.S.C. §405(g), appealing the denial of social security disability benefits. As explained below, the decision is affirmed.

## **BACKGROUND**

Sometime before 1998, plaintiff worked as a hospital cleaner. R. 33, 161. She then became a certified nurse's assistant and worked in this capacity at various hospitals. Her last job was at Fairview Nursing Plaza where she worked for approximately 11 years. R. 32, 161. In this job, she "assisted resident[s] with their daily needs of bathing[,] changing them and lifting [and] pushing them in a wheelchair." R. 183. On May 5, 2011, she quit this job. R. 160. A month later, on June 9, 2011, she filed applications for disability insurance benefits and for supplemental security income, alleging a disability onset of May 5, 2011. R. 11. She was then 57 years old. She stated that she quit working because she suffered from back and stomach problems and also because her left side was weaker than her right. R. 160, 168. Plaintiff apparently never sought any medical treatment for these problems until after she quit working. *See* R. 163.

1

On July 25, 2011, plaintiff went to the emergency room. Her chief complaint, according to medical records, was elevated blood pressure. She also complained about "having some weakness to her left side" and stated that she had been dropping things. She told doctors that these problems had been going on for two to three months and were slowly getting worse. R. 277. Doctors ordered a CT scan, but it did not show evidence that plaintiff had a stroke. R. 278. Doctors told plaintiff that they did not believe she had a stroke and informed her that her problems were more likely related to her blood pressure. Plaintiff was given a prescription for Clonidine and told to take baby aspirin. She was told that if her problems worsened, she should follow up with her family doctor. The diagnostic conclusion was hypertension and urinary tract infection. R. 278.

During this general period, roughly the 20 months from when plaintiff quit working until the administrative hearing, she saw two treating doctors. One was her primary physician, Dr. Larry Sy at the Crusader Clinic, and the other was Dr. Terry Roth, a neurologist who was also at Crusader. Also, in November 2011, plaintiff saw consultative examiner, Dr. K.P. Ramchandani, who completed a report. *See* Ex. 6F.

A hearing was held before an administrative law judge ("ALJ") on January 8, 2013.[1] Plaintiff testified about her work history, medical treatment, and daily activities. The ALJ asked plaintiff why she stopped working at Fairview. She testified that she started feeling sick. She also stated, after the ALJ asked for a more specific explanation, that she "didn't have no patience" with the residents. R. 32. She was not fired from the job, but instead quit. When asked why she could not go back and work this or a similar job, she stated: "Because my left side, my left hand, I don't have any grip in it, and my leg as far as walking and standing is weak." R. 33.

---

[1] Plaintiff was represented by counsel, the same counsel now representing her in this Court.

When asked about whether she was experiencing any pain on the day of the hearing, Plaintiff responded, "No, not really, not on my left side, but sometime [on] the side of my left head. A couple of times I've had a sharp pain, but I told the neurologist about it." R. 34-35. She testified that she experiences numbness in her hand, arm, leg, and feet. The only prescription medicine plaintiff was then taking was for her blood pressure. R. 35. When asked what she is "doing [to] try and make [her] symptoms better," plaintiff answered, "I try to do the same thing I usually do." R. 36. Plaintiff testified that she could not even walk a half a block without resting. She did not use a cane. She could stand for 15 minutes at a time. Plaintiff testified that she walks off balance due to the weakness in her left leg. R. 42. She stated that she has fallen "several times." R. 42. The last time was in the summer while trying to get up off the couch. Plaintiff testified that she could not lift very much with her left hand, not even five or ten pounds or a bag of sugar. With her right hand, she could lift maybe up to 40 pounds. R. 36-37.

Plaintiff testified that, on a typical day, she wakes up, takes her medication, washes the dishes, and does a little cleaning. She volunteers for about 8 hours a month at a church, which is a requirement for her to continue receiving subsidized housing. R. 37. In this job, she waters the plants and dusts. She lives alone and cooks her own meals and does the dishes and laundry and grocery shopping. For exercise, she does "a little walking" about once a week. R. 38. For hobbies, she likes to do crossword puzzles and read the Bible and other things.

The vocational expert testified that plaintiff's job as a nursing assistant was semi-skilled in the medium exertion category and her job as a hospital cleaner was medium exertion and unskilled. The vocational expert then stated that she was unsure what the heaviest weight was that plaintiff had to lift in her job as a hospital cleaner. Plaintiff testified that she did not believe

that she lifted more than 20 pounds, although she may have had to push more than 20 pounds on occasion. R. 46.

The ALJ then asked the vocational expert the following hypothetical:

> If I were to assume on the basis of the record an individual who was 58 years old and has the work experience and education of this claimant, assuming someone who has the following exertional limitations, could sit for six to eight hours out of a day, stand and walk at least six hours out of a day. Assuming someone who could lift and carry frequently up to 25 pounds, occasionally up to 50 pounds. With no other restrictions and limitations, I assume such a person could perform all of the claimant's past work, at least as it is performed in the general economy.

R. 46-47. The vocational expert answered yes. Plaintiff's counsel asked no follow-up questions.

On February 1, 2013, the ALJ found plaintiff not disabled. The ALJ found that plaintiff had the following severe impairments: "hypertension, with continued tobacco abuse; obesity; and a history of cerebral occlusion with mild left-sided hemiparesis." R. 13. The ALJ found that plaintiff did not meet a listing and that she had the residual functional ability to perform the full range of medium work. At step four, the ALJ concluded that plaintiff was capable of performing past relevant work as a nurse's assistant or hospital cleaner.

## DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility

determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

Plaintiff raises three arguments for a remand. These arguments are vague and rely mostly on a series of long quotations with little legal argument and no meaningful discussion of the medical evidence. Plaintiff's first argument is that the ALJ failed to include all the relevant limitations in the hypothetical question posed to the vocational expert. Plaintiff seems to be objecting primarily to the assumption that she could lift up to 25 pounds frequently and up to 50 pounds occasionally. Plaintiff's second argument is that the ALJ should have called a medical expert at the hearing. This argument, which is only five sentences, again seems to focus mostly on her lifting abilities. Plaintiff argued the following: "The medical province had to have been invaded for the ALJ to find that a 57 year-old female could lift and carry that amount of weight as discussed hereinabove." Dkt. #12 at 7. Plaintiff's third argument is that the ALJ failed to consider the seven factors listed in Social Security in SSR 96-7p ("Assessing the Credibility of an Individual's Statements"). However, plaintiff never discusses any of the evidence, nor identifies which factor the ALJ supposedly overlooked. Ultimately, all three arguments circle back to the same core contention that the ALJ was wrong in concluding that plaintiff could work in her past relevant jobs as a hospital cleaner and nurse's assistant because she could not lift 25 pounds frequently and 50 pounds occasionally.

The Court is not persuaded by plaintiff's overarching argument. As the Government explains in its response brief, the ALJ considered all the relevant evidence and relied on substantial evidence to support her conclusions. Plaintiff has not argued that the ALJ ignored or misinterpreted any evidence. Plaintiff's claim for being disabled rests solely on her testimony that she experienced weakness in her left side, that she sometimes fell ("several" times with the last time being six months ago), that she sometimes had trouble

5

gripping things with her left hand, and that she cannot pick up more than five pounds with her left hand, although she maybe could lift up to 40 pounds with her right hand. Counterposed against this testimony was all the medical evidence, which uniformly either failed to support plaintiff's allegations or directly rebutted them.

The ALJ summarized this evidence throughout the opinion. It included the following. No doctor ever imposed any functional limitations on plaintiff. Both of plaintiff's treating doctors, as well as the consulting physician, found that plaintiff's gait, grip strength, and power were normal or nearly normal in both hands and arms. These findings stood in contrast to the reports plaintiff made to these doctors. As the ALJ summarized in regard to plaintiff's visits with Dr. Roth: "Despite more complaints of increased left-sided weakness and worse thinking throughout 2012, Dr. Roth *consistently found* 5/5 strength in all of the claimant's extremities, normal reflexes, a normal gait, and normal speech." R. 17 (emphasis added). Neither doctor prescribed any medication for her problems. Plaintiff has not alleged having problems with ongoing pain. Neither doctor recommended that she undergo any physical therapy or do any exercises at home. Doctors periodically ordered tests and scans, including a CT scan, a Doppler scan, and a brain MRI, but none revealed any obvious problems to account for plaintiff's alleged symptoms. R. 17. Plaintiff and her attorney have suggested that her problems were the result of a stroke she allegedly had in July 2011 when she went to the emergency room (R. 40-41), but doctors there, after conducting tests, did not believe she had a stroke. *See* R. 278 ("[Plaintiff] was advised that she was not having an acute CVA, that some of the changes were more likely related to her blood pressure."). Dr. Ramchandani, the consulting examiner, examined plaintiff and found that she had a normal gait and normal speech, that she was able to get up from a squatting position, that she had grip strength of 5/5 on the right side and 4+/5 on the left side, that she had "5/5 power on the right side with barely perceptible weakness at 4+/5 on the left side." R. 17. In sum, the objective medical evidence is consistent and provides no support for plaintiff's claims. *See Powers v. Apfel*,

6

207 F.3d 431, 435-36 (7th Cir. 2000) ("The discrepancy between the [symptoms] attested to by the witness and that suggested by the medical evidence is probative that the witness may be exaggerating her condition.").

In addition to this overall discrepancy, the ALJ pointed to other factors casting doubt on plaintiff's testimony that her problems made it impossible for her to work in her past jobs as a hospital cleaner or nurse's assistant. First, plaintiff testified that she was not fired from her job, but instead voluntarily quit because, in addition to her alleged health problems, she had "lost patience with her residents." R. 18. Second and relatedly, the ALJ noted that plaintiff only first complained about her health problems, such as her left-sided weakness, after she stopped working. These facts, the ALJ reasoned, implied that plaintiff's physical impairments may not have been the real reason she quit working. Plaintiff has offered no specific responses here in this Court to these two arguments. Third, the ALJ noted that plaintiff admitted to carrying out a variety of daily activities. *See* R. 18 ("For example, the claimant is able to live alone, prepare simple meals, perform light household chores, grocery shop, work eight hours per month at her church, and got to church and Bible study regularly.").

As for plaintiff's argument that the ALJ failed to apply the seven factors listed in SSR 96-7p, this argument is undeveloped and overlooks the ALJ's analysis. The ALJ, in fact, referenced 96-7p. R. 15. Moreover, although the ALJ did not explicitly analyze each 96-7p factor one by one, she still considered them. The Court will only briefly touch on these points because they have been summarized above. With regard to medications and other treatment (fourth and fifth factors), the ALJ found it significant that none of plaintiff's treating doctors prescribed any medication (other than aspirin and blood pressure medicine) nor did they recommend any therapeutic steps to be taken to address plaintiff's alleged problems and plaintiff herself did not

7

refer to any measures she was taking to treat her problems (the sixth factor). As for the frequency and intensity of symptoms (second factor), the ALJ summarized the medical evidence and found that plaintiff generally did not report any problems with pain (other than occasional numbness) and that her examinations findings were normal or nearly normal on a consistent basis as observed by a range of doctors. As for daily activities (first factor), the ALJ summarized them earlier in the opinion (R. 15-16) and then explicitly weighed them in the later credibility analysis (R. 18). Although plaintiff complains that the ALJ failed to explicitly address these factors, plaintiff notably has not made any effort to do so herself. Moreover, plaintiff has failed to present any authority that each factor must be explicitly examined. Simply put, she has made no argument as to why a more explicit analysis would lead to a different conclusion.

In sum, as required by the Seventh Circuit, the ALJ gave "specific reasons" for, and adequately discussed, her credibility findings. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (a credibility finding "must be specific enough to enable the claimant and a reviewing body to understand the reasoning"); *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (an ALJ's credibility determination should be reversed only if it is patently wrong). This Court is not persuaded that the ALJ's multi-pronged credibility explanation is patently wrong.

In conclusion, the Court finds that plaintiff's three arguments all make the same general claim that the ALJ lacked a basis for finding that plaintiff could work her past jobs as a hospital cleaner and a nurse's assistant where she would have to lift up to 25 pounds frequently and 50 pounds occasionally. With regard to this central claim, the Court cannot find any error in the ALJ's analysis. The ALJ considered the relevant evidence and articulated multiple reasons for not believing plaintiff's allegations. In her two briefs to this Court, plaintiff has never directly challenged any of this reasoning other than to point out her apparent belief that it is simply

8

unreasonable on its face to suppose that a woman her age could lift the weight needed to perform these past jobs. In short, plaintiff is essentially asking this Court to second-guess the ALJ's credibility judgment by making an independent credibility determination, something this Court is not empowered to do. *See Elder*, 529 F.3d at 413.

In light of the one-sided nature of this evidence and given the ALJ's explanations and analysis, the Court cannot fault the ALJ for not exercising her discretionary duty not to call an expert at the hearing. *Tichenor v. Colvin*, 2015 WL 1455702, *6 (S.D. Ind. March 30, 2015) ("An ALJ is not required to seek the opinion of additional medical experts, and the decision to summon a medical expert is discretionary."). As for plaintiff's specific complaint that the hypothetical to the vocational expert was not fair, the Government correctly notes that the ALJ is only required to include those limitations that are accepted as credible and that, in any event, the ALJ found that plaintiff could do her past relevant work at step four, which means that the hypothetical played no role in the decision. *See* Dkt. #15 at 12-13. To the extent that the Court has not addressed any remaining aspect of plaintiff's arguments, which as noted above are vague and hard to understand in places, the Court finds that they fail for the additional reasons set forth in the Government's response brief.

## CONCLUSION

For these reasons, plaintiff's motion for summary judgment is denied; the government's motion is granted; and the decision of the ALJ is affirmed.

Date: February 29, 2016  By: _____
Iain D. Johnston
United States Magistrate Judge

9